UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROMANTE JOMALL ADAMS,

    Plaintiff,

v.

WARDEN JOHN DAVIDS,

    Defendant.
_____/

Case No. 2:21-cv-12361

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS [1]**

Petitioner Romante Jomall Adams, an inmate confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed a habeas petition under 28 U.S.C. § 2254. ECF 1, PgID 1. Petitioner challenged his conviction for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1)(a), intentionally discharging a firearm from a vehicle, causing death, Mich. Comp. Laws § 750.234a(1)(d), felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm in the commission of a felony, Mich. Comp. Laws § 750.227b. *Id.* at 1−2. For the reasons below, the Court will deny Petitioner's request for a writ of habeas corpus.

**BACKGROUND**

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with his co-defendant Bryan Kyle Sherrod. *People v. Adams*, No. 347308, 2020 WL 4915356, at *1 (Mich. Ct. App. Aug. 20, 2020). Petitioner and Sherrod went to a liquor store in Detroit, Michigan. *Id.* at 2. At the

1

liquor store, Petitioner and the victim had a verbal altercation. *Id.* After other customers intervened, Petitioner turned to leave, but first pointed his finger at the victim and said, "I got you." *Id.* Petitioner and Sherrod then drove away. *Id.*

Ten minutes later, the security footage from the liquor store showed that Petitioner's vehicle returned to the scene. *Id.* When the victim left the store and was out of view of the security cameras, Sherrod and Petitioner opened fire from the vehicle. *Id.* The victim was shot twice, causing his death. *Id.* And a bullet fired by Petitioner struck Sherrod's right hand and the nine-millimeter Glock 17 handgun that Sherrod fired. *Id.* While driving away from the store, Petitioner's vehicle struck another car. *Id.*

Police discovered Petitioner's vehicle at a nearby apartment building. *Id.* The blood from Sherrod's wound led from the passenger-side door of the vehicle to the front porch of an apartment. *Id.* The police searched the apartment pursuant to a search warrant and found an AR-15 and a nine-millimeter—which were determined to have fired bullets at the scene of the crime—ammunition for the AR-15, cleaning supplies, and Sherrod's blood. *Id.* Sherrod's blood was also found inside the vehicle and Petitioner's DNA was found on the steering wheel of the car. *Id.*

Petitioner contacted police officer Adlone Morris, a family friend. *Id.* Officer Morris contacted Detective Jeb Rutledge, the officer-in-charge of the investigation, stating that Petitioner wanted to turn himself in for questioning. *Id.* Ultimately, Petitioner decided against surrender and instead, changed his cell phone number and fled to Tennessee. *Id.*

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the exercise of peremptory challenges by the prosecutor to exclude three African-American members of the jury pool that was severely underrepresented with African-American jurors violated Petitioner's constitutional right to Equal Protection of the law; (2) Petitioner was denied a fair trial and due process under the federal constitution where the prosecutor introduced evidence that Petitioner refused to turn himself in to the police to be interviewed by the investigating officer, implying that Petitioner knew he was in trouble—and defense counsel was ineffective for failing to object; (3) Petitioner was denied due process of law when the lower court instructed the jury that the lesser included offense of voluntary manslaughter applied only to the co-defendant. ECF 1.

## LEGAL STANDARD

The Court may grant a State prisoner habeas relief only if his claims were adjudicated on the merits and the State court's adjudication was "contrary to" or resulted in an "unreasonable application of" clearly established law. 28 U.S.C. § 2254(d)(1). "A [S]tate court's decision is contrary to . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405–06 (2000)). A State court does not unreasonably apply Supreme Court precedent when its application of precedent is merely "incorrect or

erroneous," but when its application of precedent is "objectively unreasonable." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003). "A [S]tate court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the [S]tate court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation omitted).

## DISCUSSION

I. *Batson* Claim

Petitioner first alleged that the prosecutor unconstitutionally used peremptory strikes to excuse three African American jurors based on their racial background. ECF 1, PgID 30. The Equal Protection Clause of the Fourteenth Amendment prohibits a prosecutor from challenging potential jurors solely on account of their race. *Batson v. Kentucky,* 476 U.S. 79, 89 (1986). A criminal defendant may establish a prima facie case of purposeful discrimination by showing that he is a member of a cognizable racial group and that the prosecutor used peremptory challenges to remove members of the defendant's race from the jury venire. *Id.* at 96. The defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used the peremptory challenges to exclude jurors from the jury on account of their race. *Id.* Relevant circumstances include the pattern of strikes and the prosecutor's questions and statements. *Id.* at 96−97.

Once the defendant makes a prima facie showing, the burden then shifts to the prosecutor to offer a "race neutral explanation" for challenging the jurors. *Id.* at 97. A "race neutral" explanation in the context of a *Batson* claim means an explanation

4

based on something other than the race of juror. *Id.* "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez v. New York,* 500 U.S. 352, 360 (1991).

The third step of the *Batson* inquiry requires the party who challenges the peremptory challenge to "demonstrate that the purported explanation is merely a pretext for a racial motivation." *McCurdy v. Montgomery County*, 240 F.3d 512, 521 (6th Cir. 2001) (overruled on other grounds). "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." *Miller–El v. Cockrell*, 537 U.S. 322, 339 (2003). Then "the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." *Hernandez*, 500 U.S. at 359. "[A][S]tate court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El v. Cockrell*, 537 U.S. at 339 (quoting *Hernandez,* 500 U.S. at 364).

On habeas review of a State conviction, a *Batson* claim involves "a mixed question of law and fact and 'necessarily focuses on the reasonableness of the decisions of the State courts—that is, whether those decisions constituted an unreasonable application of Supreme Court precedent.'" *Braxton v. Gansheimer,* 561 F.3d 453, 458 (6th Cir. 2009) (quoting *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003)) (additional citation omitted). However, the question of whether a prosecutor intended to discriminate on the basis of race in challenging a potential juror is a question of historical fact. *Lancaster*, 324 F.3d at 429. "Under [the] AEDPA,

5

primary or historical facts found by [S]tate courts are presumed correct and are rebuttable only by clear and convincing evidence." *Id.* at 429 (citations and internal quotation marks omitted). In other words, "a [S]tate court [should] be presumed correct unless the petitioner rebuts this presumption by clear and convincing evidence.'" *Braxton,* 561 F.3d at 458 (quoting *Lancaster,* 324 F.3d at 429, n. 1).

Petitioner first challenged the prosecutor's use of a peremptory strike against prospective juror HF.[1] *See Adams*, 2020 WL 4915356, at *4. During *voir dire*, the prosecution indicated three race-neutral reasons for striking HF. First, HF's father was a criminal defense attorney. *Id.* And a juror's familial relationship with a criminal defense attorney is a valid race-neutral reason to exclude the juror. *See Moore v. Mitchell*, 708 F.3d 760, 800, 802 (6th Cir. 2013) (holding the State court's finding that a juror may be excluded because her uncle was a public defender is not an unreasonable application of law). Second, HF had friends who had been arrested during a political protest. *Adams*, 2020 WL 4915356, at *4. And a prospective juror's animosity or resentment towards law enforcement is a valid race-neutral reason for peremptorily challenging that juror. *See United States v. Harris*, 192 F.3d 580, 586–87 (6th Cir. 1999); *see also Pirtle v. DeWitt*, 31 F. App'x 191, 192 (6th Cir. 2002). Third, the prosecution cited HF's demeanor while answering the above questions. *Adams*, 2020 WL 4915356, at *4. "Body language and demeanor are permissible race-neutral justifications" to exercise a peremptory challenge. *McCurdy*, 240 F.3d at 521; *see also United States v. Forrest*, 402 F.3d 678, 687 (6th Cir. 2005) (holding that a

---

[1] The Court will refer to the jurors by their initials to preserve their privacy.

6

juror's "extreme negative reaction" to being called for jury duty-was a permissible race-neutral justification).

The judge agreed with the prosecution, noting that HF's association and potential involvement in political protests "portrays a political or ideological[] point of view," which allowed the prosecutor to "justifiably find [it] not in his interest" to keep HF on the jury. *Adams*, 2020 WL 4915356, at *4 (alterations in original). And although the prosecutor slightly misstated HF's statements during *voir dire* by referring to HF's participation in protests, when it was only her friends who participated in the political protest, such a mistake by the prosecution "is entirely understandable, and mistaken explanations should not be confused with racial discrimination." *Id.* (citing *Flowers v. Mississippi*, 139 S. Ct. 2228, 2250, (2019)).

Petitioner next challenged the prosecutor's use of a peremptory challenge to remove TN from the jury. *See Adams*, 2020 WL 4915356, at *5. When questioned by the trial court, TN stated that she had "a cousin and uncle that's been in prison for life for killing somebody." *Id.* TN also informed the court that she visited her uncle in prison and that she just graduated from high school last year. *Id.* The prosecutor, in response to the *Batson* challenge, "claimed that TN had been removed from the jury because she was too young to take such a significant case seriously enough, and because she had family in the system whom she visited." *Id.* The judge credited the prosecutor's response as being valid. *Id.* Indeed, a prospective juror having a family member in prison is a valid race-neutral reason to peremptorily remove the juror. *See Akins v. Easterling,* 648 F.3d 380, 386−89 (6th Cir. 2011) (holding that striking the

7

only African American juror on basis that her half-brother had been convicted of selling drugs was not contrary to, or an unreasonable application of, clearly established law); *see also* U*nited States v. Beverly*, 369 F.3d 516, 527 (6th Cir. 2004). Similarly, age and educational levels are also valid race-neutral reasons to exclude a juror. *See United States v. Campbell*, 317 F.3d 597, 605−06 (6th Cir. 2003).

Petitioner then argued that the prosecutor's reasons for excluding TN were pretextual because other jurors were of a similar age were allowed to remain on the jury. *Adams*, 2020 WL 4915356, at \*5. To be sure, "[w]hen a prosecutor's 'proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack panelist who is permitted to serve, that is evidence tending to prove purposeful discrimination.'" *Id.* (citations omitted). But Petitioner did not point to any other jurors who were similarly aged and not excused from jury services, although Petitioner "bore the burden of furnishing the reviewing court with a record to verify the factual basis of any argument upon which reversal was predicated." *Id.* (quoting *People v. Elston*, 462 Mich. 751, 762, 614 N.W.2d 595 (2000)). What is more, "Petitioner's bare assertion *is not* supported by the record. Indeed, prospective juror KB also informed the trial court that she had just graduated from high school. Like TN, KB was excused by the prosecution through the use of a peremptory strike. Thus, Petitioner's assertion that the trial court clearly erred by refusing to consider the prosecution's disparate treatment of similarly-situated black and nonblack prospective jurors lacks factual support and merit." *Id.* (citations omitted) (emphasis in original).

8

Similarly, "Petitioner assert[ed] there were similarly-situated nonblack jurors who were permitted to stay on the jury despite having family members in prison." *Id.* at 6. "[Petitioner] specifically cites the prosecution's treatment of prospective juror DJ, who informed that trial court that she had two brothers who were 'serving natural life in prison.' DJ also stated, however, that she was a retired Michigan Department of Corrections (MDOC) officer, having worked as one for 25 years. DJ said she believed both of her brothers had been tried fairly and that she could fairly consider the present case." *Id.* "It is well established that a *Batson* violation may be shown by disparate treatment of white and minority jurors—that is, if a side-by-side comparison of some black potential jurors who were struck and white ones who were not shows that the only material distinction between the removed black and the retained white individuals is their race." *United States v. Atkins*, 843 F.3d 625, 631 (6th Cir. 2016) (cleaned up). Petitioner has made no showing here. Although DJ had two brothers in prison, there is no indication that she visited them in prison. *Adams*, 2020 WL 4915356, at *6. DJ was much older than TN and had just retired from working for the Michigan Department of Corrections. *Id.* DJ also stated that she believed her brothers were tried fairly. *Id.* In light of the material differences between TN and DJ, it was not objectively unreasonable for the Michigan Court of Appeals to conclude that the backgrounds of DJ and TN were not sufficiently comparable to demonstrate that the reasons for excusing TN were pretextual. *See Cortez-Lazcano v. Whitten*, 81 F.4th 1074, 1086–87 (10th Cir. 2023).

Petitioner last challenged the prosecutor's decision to peremptorily strike prospective juror AP. *Adams*, 2020 WL 4915356, at *6. When asked for a race-neutral reason for excusing AP, the prosecutor indicated that AP's eyes were closed behind his sunglasses when the trial judge was giving information or asking questions to other potential jurors. *Id*. The prosecutor also noted that AP was young and appeared disinterested. *Id*. The judge agreed with the prosecution's description of AP and found this was a valid race-neutral reason to excuse AP. *Id*. Indeed, AP's disinterest or boredom provided a valid race-neutral reason for his removal from the jury. *Braxton*, 561 F.3d at 466; *see also United States v. Rodriguez*, 38 F. App'x 244, 253 (6th Cir. 2002). As mentioned above, "[B]ody language and demeanor are permissible race-neutral justifications" to exercise a peremptory challenge. *McCurdy*, 240 F.3d at 521.

In sum, the State trial judge determined that the reasons the prosecutor offered for excusing the three African American jurors were race-neutral and not motivated by a discriminatory intent. "[A] [S]tate court's finding of the absence of discriminatory intent is a 'pure issue of fact' accorded significant deference." *Miller–El v. Cockrell*, 537 U.S. at 339. For the reasons above, the State trial judge's decision to credit the prosecutor's race-neutral explanations was not an unreasonable determination of the facts.

What is more, the final jury composition was "about evenly split between black and nonblack jurors, as reported by the trial court." *Adams*, 2020 WL 4915356, at *7. Although the final racial composition of a jury is not determinative of whether a *Batson* violation occurred, it is still a relevant factor to consider in determining

10

whether there was a violation of *Batson*. *See United States v. Simon*, 422 F. App'x 489, 495 (6th Cir. 2011); *see also United States v. Yang*, 281 F.3d 534, 549 (6th Cir. 2002) ("The final makeup of the jury is relevant to a finding of discrimination."). For the reasons above, the Michigan Court of Appeals reasonably concluded that Petitioner failed to show a discriminatory intent on the part of the prosecutor. Petitioner is not entitled to habeas relief on his *Batson* claim.

II.  Ineffective Assistance of Counsel

Petitioner next claimed that two police officer witnesses, Adlone Morris and Jeb Rutledge, improperly commented on his pre-arrest silence. ECF 1, PgID 45–50. Petitioner specifically points to testimony from these officers that Petitioner failed to turn himself in for questioning to the police after he inquired about doing so. *Id.* In the alternative, Petitioner argued that trial counsel was ineffective for failing to object.[2] *Id.* at 50.

Commenting on Petitioner's pre-arrest silence was not improper because nothing in the record indicates that Petitioner was under arrest or had been advised of his *Miranda* rights when he failed to turn himself into the police. Prosecutors in a criminal trial may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183-84, 191 (2013); *see also Abby v. Howe*, 742 F.3d

---

[2] Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of Petitioner's defaulted claim, it would be easier to consider the merits of this claim. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

221, 228 (6th Cir. 2014). In addition, a prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 239 (1980).

Moreover, a prosecutor violates the Due Process Clause of the Fourteenth Amendment by using a defendant's silence after he has been given *Miranda* warnings to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976). However, *Doyle* "has no application unless the defendant has remained silent and could be considered to have done so in reliance on the implied assurances of the *Miranda* warnings." *United States v. Crowder,* 719 F.2d 166, 172 (6th Cir. 1983). In other words, *Doyle* is limited to situations in which the defendant's silence was induced by the governmental assurances embodied in the *Miranda* warnings. *See Fletcher v. Weir*, 455 U.S. 603, 606 (1982) (per curiam) (noting that post-arrest statements made before *Miranda* warnings are given may be commented upon by prosecutor); *Jenkins v. Anderson*, 447 U.S. at 240 (noting pre-arrest silence may be used for impeachment because "no governmental action induced [the defendant] to remain silent before arrest").

Petitioner was neither arrested nor advised of his *Miranda* rights at the time that he failed to turn himself in to the police. *Adams*, 2020 WL 4915356, at *9. Because Petitioner did not invoke his right to remain silent, was not the subject of a custodial interrogation, and had not been given Miranda warnings, his silence was "not a constitutionally protected silence." *Id*. The introduction of evidence of Petitioner's silence did not violate any of his constitutional rights.

12

Next, to prevail on his related ineffective assistance of counsel claim, Petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. Because it was permissible for the prosecutor to introduce evidence of petitioner's pre-arrest silence, counsel was not ineffective for failing to object to the admission of this evidence. *See Abby v. Howe*, 742 F.3d at 228. Petitioner is not entitled to relief on his second claim.

III. <u>Lesser Included Offense</u>

Last, Petitioner contended that the trial court violated his right to a fair trial by giving a voluntary-manslaughter instruction as a lesser included offense of first-degree premeditated murder for co-defendant Sherrod, but not for Petitioner. ECF 1, PgID 51. The Michigan Court of Appeals declined to address Petitioner's argument and found that Petitioner waived review of the issue by expressly approving the jury instructions. *Adams*, 2020 WL 4915356, at *9–10.

Waiver is an "'intentional relinquishment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). A criminal defendant who waived his rights "may not then seek appellate review of claimed deprivation of those rights, for his waiver has extinguished any error." *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (citing *Olano*, 507 U.S. at 733–34); *see also Shahideh v. McKee*, 488 F. App'x 963, 965 (6th Cir. 2012) ("waiver is a recognized, independent and adequate [S]tate law ground for refusing to review alleged trial errors"). "When one knowingly waives his charged error, that challenge

13

is forever foreclosed, and cannot be resurrected on appeal." *Morgan v. Lafler*, 452 F. App'x 637, 646, n. 3 (6th Cir. 2011) (citations omitted).

Because defense counsel approved of the jury instructions as given, Petitioner waived the instructional error claim. *See Adams*, 2020 WL 4915356, at *10. When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *Fields v. Bagley,* 275 F.3d 478, 486 (6th Cir. 2001) (citations omitted).

Nevertheless, assuming the claim was not waived, Petitioner would still not be entitled to habeas relief. The United States Supreme Court declined to determine whether the Due Process Clause requires that a State trial court instruct a jury on a lesser included offense in a non-capital case. *See Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003) (citing to *Beck v. Alabama,* 447 U.S. 625, 638, n. 4 (1980)). And the Sixth Circuit held that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle,* 260 F.3d 531, 541 (6th Cir. 2001) (citations omitted). Accordingly, the failure of a State trial court to instruct a jury on a lesser included offense in a non-capital case is "not cognizable on habeas review." *Adams v. Smith,* 280 F. Supp. 2d 704, 717 (E.D. Mich. 2003).

Moreover, the mere fact that Petitioner was charged with first-degree murder, which carries a sentence of life imprisonment without parole, does not mean that he was charged with a capital offense. *See Scott v. Elo,* 302 F.3d 598, 606 (6th Cir. 2002). Petitioner is thus not entitled to habeas relief on his third claim. *Id.* (holding that a criminal defendant who was convicted of first-degree murder in Michigan and

sentenced to life imprisonment without parole was not entitled to habeas relief based upon the trial court's failure to instruct on the lesser offense of involuntary manslaughter).

## CERTIFICATE OF APPEALABILITY

Before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability, which may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c); *see* Fed. R. App. P. 22(b). Petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

For the reasons above, the Court finds that Petitioner cannot make a substantial showing of the denial of a constitutional right with respect to his claim. *See* 28 U.S.C. § 2253(c)(2). The Court will therefore deny a certificate of appealability.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the petition for a writ of habeas corpus [1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

15

This is a final order that closes the case.

**SO ORDERED.**

s/ Stephen J. Murphy, III<br>
STEPHEN J. MURPHY, III<br>
United States District Judge

Dated: January 30, 2024